Appeals for the Ninth Circuit is now in session. Be seated. Good morning, everyone. As always, we're delighted to be here. Before we begin, on behalf of the Ninth Circuit, Judge Schroeder, Judge Bress, and I would like to welcome and thank the students from Hawaii Pacific University and their professor, Professor Merkel, for being here with us. Our law clerks will be available after the argument to talk with the students if you would like that. All right, so with that, we will call the cases in the order listed on the docket. The first case, Ortiz-Salas v. Garland, has been submitted on the briefs. The first case on calendar for argument is United States v. Aponik. Counsel for Appellant, please approach and proceed. Good morning, Your Honors. Good morning. May I reserve two minutes of time? Yes. Please be reminded, Counsel, that the time showing is your total time remaining on the clock. Yes, thank you, Your Honor. May it please the Court. Verlyn Aponik's... Could you state your name for the record, please? Peter Payer is appearing on behalf of Appellant Verlyn Aponik. Your Honors, in this case, Verlyn Aponik's conviction for unlawfully disposing of her firearms to her defendant husband must be reversed because she was denied her Sixth Amendment right to conflict-free counsel. Now, the standard in this case for this type of issue is that, number one, we need to show that counsel represented conflicting interests, and number two, that an actual conflict adversely affected her counsel's performance. Before you get there, the government says the record is not sufficiently developed and that this should be brought as a 2255 motion. How do you respond? First, they always make that argument in these types of cases, and I would submit that in this case the record is sufficiently developed for the following reasons. First, we have the undisputed fact that we have concurrent representation of multiple defendants who have directly incompatible defenses in this case. We see this in the language. Counsel, we don't have anything from counsel to say if there was a waiver of the conflict, what the discussion was about representing them, and so I agree with Judge Bress that perhaps, well, I don't know if Judge Bress, this is his viewpoint, but there is some force to the government's argument that we need to have more information before this case can be decided on an IAC claim. I think what's glaringly omitted from the record in this case is the presence of a written waiver, which is required by the Ethical Rules 1.7, and in this case it was clear. So there's no indication on the record that the defendants were advised of the potential for conflict or that they waived it, and the court in prior hearings, for example, at the status hearing where counsel moved to withdraw from both defendants, I'm sorry, when counsel moved to withdraw, the court said, the court indicated that if they wanted to obtain new counsel and have the same lawyer, they would just need to submit a waiver of conflict. So this indicated that the court was aware that these two defendants, to have one lawyer, would have been required to submit a written waiver and consent. Why do you object to having this issue decided at habeas where all of the information can be obtained and explored by a court deciding this point? Why is it necessary to decide it on direct appeal as opposed to habeas? Because in this case the record I would submit is sufficiently developed for this court to entertain and dispose of the issue of ineffectiveness. What would be wrong with having it done at the habeas proceedings? What's wrong with that from your point of view? It would be procedurally expensive. It would be a different... And a delay. It would be a delay, yes. Well, counsel, let me ask you this because I share the concerns that you made. Sometimes you have to be careful what you ask for. And my understanding is that even if there is not a waiver and there may be a conflict, that there has to be some showing that it affected counsel's performance in some way. You don't have to show that you would have won, but there has to be something. And that's what's troubling me. I'm not sure I see that. I'd like to go through that, okay? So one of the things that we can show is that Verlin had plausible alternative defenses and tactics which did not happen in this case. One of them would have been she could have gone to trial. We're dealing with the same guns in both Eric's case and Verlin's case. And if she went to trial, her defense would be, Eric took the guns without my knowledge, without my consent, without my permission. I didn't know he took them. I didn't know he had the keys to the safe. I'm an innocent spouse. He stole them. He betrayed me. These are all arguments that were made at the sentencing by her subsequent attorney. These are arguments that should have been made at trial by her original counsel, but he couldn't make those arguments because if he did, he would put Eric in a position where he may have to testify against Verlin. His testimony could detrimentally affect his obligations under his plea agreement. It could result in sentencing enhancements if he testifies improperly. And there are four other tactics and alternatives. Counsel should have negotiated more favorable facts in the plea agreement, but had he done so, for example, to say the guns were stolen, to say she was a minor or a minor participant,  could have been enhanced. And another argument, Your Honor, is that if she argued that the guns were stolen, it would have exposed him under the guidelines to a plus-two enhancement, which would have increased his sentences. Counsel, typically in a case where we have asserted ineffective assistance of counsel, we have a declaration from counsel saying, Here's why I didn't make this argument. Here was my motive. Here was my tactic. And so we don't have that here. You're giving us all of these alternative arguments that should have been made. But perhaps the attorney would tell us, She asked me not to make that argument. Or there could be some explanation as to why. Maybe it would have subjected them to more impeachment evidence. It's hard to know without the declaration from the attorney as to why he elected to proceed in the way he did. We've got concurrent representatives. I understand. This is 2029 site, and we need something from someone that was there. I understand that that would be preferable, but I would just ask the court to consider the clear record that it has before it, the language of the indictments, the language of the plea agreements, the PSR, the PSR references to the offense conduct and how it references both Eric and Verlin, the characterization of these cases as related, the court's comments at the status hearing, the court's intent to have these cases sentenced together. Everybody treated these cases as though they were related. Counsel even characterized these defendants as co-defendants in this case, in their separate cases. Counsel, doesn't our case precedent express a preference for having these matters heard at habeas as opposed to on direct appeal? I know typically these are brought by habeas, but if the record is sufficiently developed, and that's what we had hoped to establish in our presentation, that this panel could entertain it on direct appeal. And if we satisfy those two components under the Keilor standard regarding representing conflicting interests in an actual conflict adversely affecting the lawyer's performance, then prejudice would be presumed, and this court could make a finding of reversible ineffectiveness. Was Judge Tydenko Gatewood the judge for all these proceedings? The magistrate judge handled the arraignment. That was Judge Bordalio. I'm sorry, former Magistrate Judge Manobusan handled the arraignment and the plea agreements, and then Magistrate Judge Bordalio handled the status hearing and the motion to withdraw, and then Judge Gatewood handled the sentencing. All very good judges, but I would just submit that on what is before the court, the record is, you know, it's not for me to say, but we would hope that the court would find that the record is sufficiently developed to find a violation based upon ineffective assistance based upon a conflicted counsel. Do you want to save some time for rebuttal, counsel? I do. All right. Thank you. Good morning. Ben Petersburg, appearing for the United States. May it please the court. We've asked the court to affirm in this case for two primary reasons. First, while Mr. Lujan's representation of both of the opponents may have presented a potential conflict of interest, there's simply insufficient information in the record to establish that an actual conflict existed or that a potential conflict ripened into an actual conflict. And second, even if there was an actual conflict, the defendant has not met her burden to show that by that actual conflict. The essential argument is that that concurrent representation had a conflict of interest because it inhibited counsel's ability to represent Verlaine Aponik, that Mr. Lujan's loyalties to Erika Aponik would limit that representation of Verlaine Aponik. And at the outset, I do think it's important to look at the sequence of events below briefly because it provides some valuable context. Erika Aponik was indicted and pleaded guilty in February of 2017 to conspiracy to commit drug trafficking, firearms offenses, and money laundering. Verlaine Aponik was not even charged until the following month in March of 2017. She was charged with firearms offenses there. And those firearms offenses do overlap factually, but they are separate criminal cases, so they are not co-defendants and it's not joint representation within the meaning of Rule 44 as argued by counsel. And why is that important? Well, the sequence shows that because Erika Aponik had pleaded guilty before Verlaine was even charged, he had already admitted his guilt to those firearms offenses. He had already established criminal liability. And the argument that— He hadn't been sentenced yet, though? That's correct, Your Honor. He had not been sentenced. So there could be some exposure on sentencing guidelines issues, as counsel argued, but in general, counsel's ability to make arguments on behalf of Verlaine is less limited because he has already admitted his own criminal liability. But there's nothing in the record before you right now that indicates that Erika and Verlaine's interests were, in fact, adverse to one another. The factual basis, for example, for Erika Aponik's guilty plea does not mention Verlaine in any way. And while new counsel in Verlaine's case did present sentencing arguments that minimized her conduct, those arguments don't undermine or contradict the basic facts that Verlaine has admitted throughout the case. Well, what about his argument that she could have asserted an innocent spouse defense? Well, it has to be a plausible defense tactic, and I don't think that's plausible on this record. If we look at—in the PSR on page 6, there's a reference to ATF's interview of Verlaine in January 2017, where she admitted prior to being charged, prior to Eric being charged, that she purchased and owned two pistols and seven rifles, that she had a permit for them, that she kept them in a safe in her bedroom, and that the key was left on top of the safe. She admitted that Erika Aponik had his own set of keys to the safe, that she had never used the firearms herself, that she let Erika Aponik touch the guns when he helped carry them into the residence at the time of purchase, and that she knew he was not allowed to have guns. So I don't think it's particularly plausible to present an innocent defense against her own admissions prior to her charges. Counsel, let me ask you this. If we were to hold—if we were to affirm and say that the record before us does not establish that the representation was affected by any conflict and that these matters are generally handled on collateral review, if this defendant goes over and files habeas and challenges effective assistance of counsel, is the government going to argue that he's precluded from doing that? No, I don't think she would be precluded. I think she would have an opportunity to present that at habeas and a potential discovery. Develop the record? Yes, Your Honor. And I—we—you know, in our brief, we argued that that would probably be the appropriate resolution to this case. You know, as counsel's arguing, he's admitting that there are many things that are not in the record that need to be in the record for him to establish a national conflict existence. For example, the existence or nonexistence of a written waiver on behalf of Verlin and Erika Aponik. The counsel was retained? They paid for his services? Yes, Your Honor, correct. They chose this joint representation or the concurrent representation. It wasn't forced upon them. They were not appointed the same attorney in this case. And here, you know, I think the court is missing crucial information in order to make a determination on this record that a conflict existed. And the court, I think, referenced some of those—some of that information previously. But there are many questions that are left unanswered. The existence of a waiver. Why the couple chose to hire Mr. Lujan for both of their cases. What instructions, if any, did Aponik give to their counsel? What were their aims and goals of their representation? What was in Verlin's mind when she decided to plead guilty as opposed to going to trial? What kind of advice did Mr. Lujan provide at that time? And even, interestingly, why did new counsel, who was appointed in November of 2020, not move to withdraw Verlin Aponik's guilty plea based on poor advice of Mr. Lujan or based on actual innocence prior to sentencing, even though sentencing didn't take place until seven months later in July of 2021? So there was ample opportunity, if there was some error there, for it to be corrected by that counsel. And, Your Honors, we would also argue that even if there was an actual conflict here, there was no adverse effect. At least there's nothing in the record that shows an adverse effect on Mr. Lujan's representation of Verlin Aponik. Again, while there were some allusions to alternate arguments that could have been presented, many of those were, in fact, presented at sentencing. And, interestingly, when those facts were presented at sentencing, the sentencing court actually inquired of counsel specifically, isn't what you're arguing inconsistent with the facts in the plea agreement? And new counsel there responded, no, I don't believe so, Your Honor. And that's at ER 28. So even the new plausible arguments that were presented were not inconsistent with the facts established by the plea agreement entered into by previous counsel. And, you know, the appellant in her briefs has not actually said she would not have pleaded guilty but for this poor advice from Mr. Lujan or the conflicted representation. And I know that's more of a prejudice standard, but it also goes to the idea that there was no adverse effect here. And, Your Honors, the final argument refers to Rule 44, and our argument is that simply does not apply under these circumstances. That Verlin and Erika Ponick were charged in separate indictments in separate criminal cases, so they are not co-defendants, and there was no joint representation within the meaning of Rule 44, so no separate inquiry from the court was required by that rule. And I see I do have a couple of minutes remaining. I'd be happy to answer any questions from the court. Otherwise, we simply ask that this court refer. It appears not. Thank you, counsel. Rebuttal. I think the bottom line, Your Honors, is that if Verlin went to trial, Erik would have been in a position where he would have to testify and would have been subject to cross-examination by his lawyer. If he had negotiated a mitigating role adjustment, it would have exposed his other client to an aggravating sentence, an aggravated sentence or an enhancement. If she argued that the guns were stolen, it would have resulted in Erik being exposed to a plus-two enhancement for stolen weapons. There's no way that trial counsel could have failed to disclose the confidential information from the respective clients. There's no way he could have protected the confidential information based upon knowing the information in the indictment and negotiating the plea agreements. These cases are directly adverse with incompatible defenses, and I think we would submit that the record is sufficiently developed to establish that counsel was materially limited in his ability to represent both clients in accordance with the Sixth Amendment. The joint representation was prohibited by law, for example, in the Wheat case, and it would have involved one claim against the other. If Verlin had challenged the indictment, she would have been in a position where she would have had to have blamed Erik. And I think, very importantly, there was no informed written consent or waiver on the record. All right. Thank you, counsel. Thank you. We understand your argument. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: SCHROEDER, RAWLINSON, BRESS